**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Estate of Ann Boggess et al., | |
| Plaintiffs, | Case No. 24-MC-43 (DWF/DJF) |
| v. | |
| U.S. Bank N.A., et al, | **ORDER** |
| Defendants. | |

This matter is before the Court on Plaintiffs' Motion to Compel Compliance with Subpoenas ("Motion") (ECF No. 1) seeking discovery from non-parties ("Non-Party Respondents"). Plaintiffs filed their motion on August 16, 2024 in the Eastern District of Pennsylvania. (*Id.*) The matter was subsequently transferred to this Court on September 16, 2024. Non-Party Respondents Apollo Global Management, Inc. and Financial Credit Investment II Trust E (collectively, "FCI") filed papers opposing the Motion on October 21, 2024. (ECF No. 18.) Non-Party Respondents Viva Capital 3 L.P., VC 3 LS 2021 L.P., Blackstone Tactical Opportunities Advisors, and Preston Ventures (collectively, "Viva") filed opposition papers on the same day. (ECF No. 20.) For the reasons set forth below, the Court denies the Motion without award of attorneys' fees and costs.

## I.    Background

### A.    The Underlying Claims and Defenses

The Motion concerns underlying litigation in this Court, *Estate of Ann Boggess et al. v. U.S. Bank N.A., et al.*, No. 23-CV-45 (DWF/DJF) ("*Boggess I*"), related to Delaware life insurance policies that Plaintiffs allege are invalid because they violated that state's prohibition on stranger-originated life insurance ("STOLI"). (*See* ECF No. 1-1 at 5.) Plaintiffs argue the policies are invalid as contrary to public policy and seek to recover the policy benefits pursuant to Delaware law. (*Id.*)

Plaintiffs are the estates of individuals whose lives were the basis for the insurance policies at issue. (*Id*.)  Defendants are securities intermediaries who helped facilitate FCI and Viva's acquisition of large portfolios of life insurance policies, including the policies at issue here.  (*Id.* at 9-10.)  As securities intermediaries, Defendants served as the beneficiaries and record owners of the policies and collected death benefits distributed under the policies before transferring those death benefits to Non-Party Respondents FCI and Viva, the beneficial owners.  (*Id.*)

On January 6, 2023, Plaintiffs filed their Complaint in *Boggess I*, alleging violations of Delaware law and seeking payment of the relevant life insurance benefits.  (*Id.* at 10.)  Defendants answered the Complaint on March 6, 2023, raising numerous defenses, including various equitable defenses and a "recoupment/offset" defense that seeks to reduce any award to Plaintiffs by "all premium payments made to the issuing insurance company to keep a given 'Policy' in-force (and interest thereon) plus the amount of any compensation or consideration given to acquire the 'Policy' (and interest thereon)."  (ECF No. 1-15 at 45.)  Over a year later, in response to Plaintiffs' subpoenas to the Non-Party Respondents for information about whether they had knowledge that the policies were STOLI policies, Defendants emailed Plaintiffs on April 17, 2024 to summarize a meeting the previous day in which they informed Plaintiffs of their intent to abandon their equitable defenses. (*See* ECF No. 22-1 at 50-51.)  Defendants further stated that they would not pursue any claims for "recoupment/offset" "other than those under common law and based on the specific wording of any statute that might ultimately be deemed to apply to any estate's claim."  (*Id.*)  In a subsequent email, Defendants asserted that removing any defenses arising in equity rendered irrelevant any discovery requests related to FCI and Viva's knowledge or state of mind concerning the STOLI status of the insurance policies at issue.  (*Id.* at 48.)  On August 12, 2024, through service of amended Rule 26 disclosures, Defendants formally confirmed their commitment to not pursue any claims or defenses in

*Boggess I* that implicated FCI and Viva's knowledge.  (*See* ECF No. 20 at 17; ECF No. 22-1 at 71-72.)

### B.     Procedural History

Plaintiffs served the subpoenas at issue on FCI and Viva on August 21, 2023.  The subpoenas requested documents related to the due diligence assessments FCI and Viva conducted in acquiring the life insurance policies at issue.  (*See* ECF No. 1-4–9.)  The parties appear to agree that the information Plaintiffs seek in their Motion relates to whether FCI and Viva were aware, when they acquired the life insurance policies through Defendants, that the policies were STOLI policies.

### 1.     The FCI Subpoenas

FCI responded to its subpoenas on September 6, 2023.  (*See* ECF No. 23-1 at 30-32.)  FCI asserted objections to producing the documents on a variety of grounds, including that there was a pending dispute concerning the Court's subject matter jurisdiction in the underlying action, that certain Plaintiffs did not appear to have authority to act on behalf of the decedents' estates, and that the requested document production was duplicative or overly burdensome.  (*Id.*)  The Court resolved the jurisdictional issue on January 9, 2024.  *See Boggess I* (ECF No. 116).  In a February 2024 email exchange between Plaintiffs and FCI, Plaintiffs threatened to file a motion to compel if FCI did not provide responsive documents promptly.  (*See* ECF No. 1-21.)  FCI produced over 900 pages of documents on May 20, 2024 concerning the origination of the relevant policies and FCI's procurement of those policies through Defendants.  (*See* ECF No. 18 at 15-16.)  According to Plaintiffs, however, FCI did not produce documents from its due diligence files related to whether FCI had knowledge at the time of acquisition that the policies were STOLI policies.

FCI states that it heard nothing from Plaintiffs after it made its production (or at any point following the February 2024 email exchange) until August 15, 2024, when Plaintiffs emailed FCI's

counsel stating their intention to file a motion to compel compliance with the subpoenas. (*Id.* at 15, 17-18.) Plaintiffs filed the Motion the next day. By that point, the fact discovery deadline in the underlying action had closed. *See Boggess I* (ECF No. 140, setting an August 12, 2024 fact discovery deadline.).

### 2.    The Viva Subpoenas

Viva responded to its subpoenas on September 5, 2024. (*See* ECF No. 22-1 at 2-34.) Viva asserted objections to producing the documents on various grounds, including: (1) that Plaintiffs had an ongoing direct action against Viva pending in Delaware state court asserting the same theory of liability under the same life insurance policies, through which the discovery was sought or should have been sought instead; (2) the documents sought from Viva as a nonparty are not relevant to the claims or defenses asserted in *Boggess I*—the action on which the subpoenas are predicated; and (3) the requests are otherwise overbroad, unduly burdensome, or seek information that is confidential, privileged, or not within Viva's custody or control. (*Id.*) Viva later agreed that Plaintiffs could use in *Boggess I* any documents that it produced to Plaintiffs in the Delaware action. (*See* ECF No. 22-1, 36-43.) On April 26, 2024, following the Delaware Court's entry of a protective order, Viva produced 499 documents in the Delaware action containing "factual information" Viva considered in the diligence process when acquiring the relevant policies, without producing the due diligence files themselves. (*See* ECF No. 20 at 11, 16.) On May 3, 2024, Plaintiffs sent Viva an email asking when they could expect a response to the Viva subpoenas. (ECF No. 22-1 at 65.) Viva objected, arguing that the Defendants in this action and *Boggess I* had withdrawn their equitable defenses, thus rendering the requested due diligence information as to Viva's knowledge regarding the status of the policies irrelevant to the claims asserted in this case. (ECF No. 22-1 at 63-64.) Plaintiffs responded that the information is still relevant to any offset defense Defendants might have and further argued

that it would not be "feasible" for Plaintiffs to use Viva's production in the Delaware action *Boggess I* under the protective orders in both cases, notwithstanding Viva's agreement to such use. (*See* ECF No. 22-1 at 62-63.) The parties continued to meet and confer by email for several weeks and finally met on June 10, 2024, when they reached an impasse on whether Viva's response to the subpoenas was sufficient. (*See* ECF No. 20 at 16.) On June 19, 2024, Viva reproduced the April production from the Delaware action for the purposes of this case. (*See* ECF No. 22-1 at 45; ECF No. 20 at 16 n.5.)[1] On August 7, 2024, five days before the close of fact discovery, Plaintiffs emailed Viva's counsel to reiterate its request for production of additional documents responsive to the subpoena. (*See* ECF No. 22-1 at 74-75.) Viva made a second production of documents in the Delaware case on August 12, 2024, which it then reproduced in this case (*see* ECF No. 20 at 16 n.5; ECF No. 22-1 at 146), but it continued to object to producing due diligence files reflecting its internal beliefs and analyses regarding the status of the policies, citing concerns about the significant legal costs and burden involved in redacting its pre-acquisition due diligence materials for attorney-client privilege, preparing privilege logs, removing materials concerning unrelated life insurance policies, producing deposition witnesses, and participating in potential litigation disputes regarding its attorney-client privilege claims (*see* ECF No. 22-1 at 70).

### 3.    Motion to Compel

Plaintiffs filed their Motion to compel compliance with the subpoenas on August 16, 2024 in a separate action in the Eastern District of Pennsylvania. (ECF No. 1.) The non-dispositive motions deadline in *Boggess I* expired three days later, and the expert discovery deadline expired September

---

[1] Viva describes the difference between what it produced in the Delaware action and what it is withholding (the documents in dispute in this Motion) as follows: "Unlike the Viva Non-Parties' due diligence materials—which would contain spreadsheets and other documents reflecting the Viva Non-Parties' internal beliefs, opinions, and conclusions about the Policies—the [Delaware] Production contains factual information, such as the premium finance loan that the insureds used to

16, 2024. *Boggess I* (ECF No. 140).

This action was transferred to the District of Minnesota on September 16, 2024 (ECF No. 5) and reassigned to the undersigned as related to *Boggess I* on September 30, 2024 (ECF No. 15). The parties in *Boggess I* filed a stipulation a few days later, on October 4, 2024, seeking to extend the dispositive motions filing deadline from October 16, 2024 to November 15, 2024, which the Court granted. *See Boggess I* (ECF Nos. 149, 151). Dispositive motions are therefore due in a matter of weeks.

## II.    Legal Standards

Federal Rule of Civil Procedure 26 governs discovery in federal court, allowing parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). While Rule 26 contemplates liberal disclosure, discovery is not unlimited. *See, e.g.*, *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 607 (D.D.C. 1969) ("Modern civil procedure in the Federal courts contemplates liberal disclosure … Nevertheless, discovery is not unbridled and not unlimited."). When adjudicating a motion to compel, courts consider "the importance of the information, issues of access, and the balance between the burden of production and expense and the benefit of the information." *Amador v. U.S. Bank Nat'l Ass'n*, No. 16-CV-600 (SRN/HB), 2017 WL 5151680, at *5 (D. Minn. Nov. 6, 2017). Therefore, a court may deny a motion to compel production of relevant discovery if the information is not proportional to the needs of the case. *See, e.g.*, *Klein v. Affiliated Group, Inc.*, No. 18-CV-949 (DWF/ECW), 2019 WL 1307884, at *8 (D. Minn. Mar. 22, 2019).

A trial court generally has broad discretion in adjudicating motions to compel, "and it is no abuse of discretion to deny a discovery request that is untimely." *Bredemus v. International Paper*

---

pay premiums on the Policies." (ECF No. 20 at 16 n.5.)

*Co.*, 252 F.R.D. 529, 534 (D. Minn. 2008). Parties to a dispute have a duty to diligently seek discovery in the case. *See Stai v. Deshane*, No. 14-CV-4152 (RHK/LIB), 2016 WL 11031224, at *4-5 (D. Minn. Jan. 22, 2016). If, after good faith efforts, the parties are unable to resolve discovery disputes among themselves, they should bring those disputes to the Court's attention in a timely fashion. Timeliness is not simply measured by technical compliance with scheduling deadlines. Parties should not engage in "deadline brinkmanship." *See Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F.Supp.2d 1040, 1044 (S.D. Iowa 2010) ("Deadlines do not grant the parties carte blanche rights to demand sizeable discovery requests up to the last possible minute.") Rather, a party seeking to compel discovery should file a motion with due regard to the relative importance of the information, the time required to resolve the dispute, and the possible impacts to the case schedule. *See Bredemus*, 252 F.R.D. at 534 (holding motion to compel as untimely even though it was filed before the motions deadline when Plaintiffs failed to take curative actions for five months and filed the motion to compel two months after the close of discovery, and because granting the motion would likely require modification of the case schedule); *see also Stai*, 2016 WL 11031224, at *4 (holding motion to compel as untimely even though it was filed before the motions deadline when Plaintiffs failed to take curative action for six months and filed the motion to compel two weeks after the close of discovery).

### III.    Analysis

#### A.    The FCI Subpoenas

The Court finds Plaintiffs' Motion is untimely with respect to the FCI subpoenas. FCI made clear its intent to produce documents responsive to the subpoenas in a February 20, 2024 email to Plaintiffs seeking clarification regarding the scope of Plaintiffs' requests. (*See* ECF No. 1-21 at 3.) After receiving answers to some of its questions the same day, FCI produced a significant number of

documents on May 20, 2024.  But there is nothing in the record to contradict FCI's contention that Plaintiffs failed to communicate with FCI in any way after the February email exchange until August 15, when Plaintiffs notified FCI by email of their intent to file the Motion.  That Plaintiffs technically brought their Motion before the non-dispositive motions deadline expired is not dispositive when, as in this case, they failed to respond to FCI's production with any communication to FCI detailing how its production was deficient.  Moreover, Plaintiffs do not appear to have exercised any diligence at all to obtain the documents they seek until *after* the close of fact discovery—a delay of six months from their last communication with FCI.  As a result, granting Plaintiffs' Motion at this point necessarily would require an entirely unjustified extension to the Court's pretrial schedule.  For these reasons, the Court finds that Plaintiffs failed to exercise appropriate due diligence, and that their Motion with respect to the FCI subpoenas is untimely.  *See Bredemus*, 252 F.R.D. at 534; *Stai*, 2016 WL 11031224 at *4-5; *Haviland*, 692 F.Supp.2d at 1044-45.

Plaintiffs' lack of diligence with respect to these documents is not only problematic because of its potential impact on the Court's pretrial schedule; it also points to a complete failure to comply with Local Rule 7.1(a), which mandates that parties meet and confer with opposing counsel in a sincere, "good-faith" effort to resolve issues before filing any motion.  Plaintiffs' last-minute email notifying FCI of their intent to file the Motion does not come close to satisfying the Court's requirement to engage in good-faith negotiations to resolve the dispute.  To the extent that FCI's production might have been deficient, Plaintiffs did not give FCI an adequate opportunity to explain or cure it.  The Court denies Plaintiffs' Motion with respect to the FCI subpoenas on these grounds.

### B.    The Viva Subpoenas

Whether Plaintiffs' Motion is untimely with respect to the Viva subpoenas presents a closer

question.  The period of delay from the June 10, 2024 meeting at which Viva says an impasse was reached until Plaintiffs filed their Motion was shorter—approximately two months.  Moreover, the record reflects multiple exchanges in which Plaintiffs and Viva conferred regarding Viva's response to the subpoenas.  Viva does not dispute that it understood Plaintiffs' position or the fact that an impasse was reached.  The Court remains troubled that Plaintiffs delayed for over two months after reaching an impasse with Viva to file their Motion, particularly since they waited until after the close of fact discovery, thus anticipating additional significant delays to the Court's schedule that might have been avoided.  But Plaintiffs' lack of diligence is just one of the factors the Court has weighed in declining to grant Plaintiff's Motion with respect to Viva.

The Court also considers whether the requested non-party discovery is relevant and proportional to the needs of the underlying case (i.e., *Bogess I*).  Having reviewed the parties' briefs and attached exhibits, the Court concludes that the documents Plaintiffs seek are of limited relevance to *this* dispute.[2]  Defendants have made it clear that they will not raise any defense that puts FCI or Viva's knowledge or state of mind concerning the life insurance policies' STOLI status at issue.  (*See* ECF No. 22-1 at 48.)  Instead, Defendants intend to pursue an affirmative recoupment defense based on a legal theory that grants an offset automatically, without regard to any culpability.  (*See* ECF No. 22-1 at 63-64.)  Plaintiffs contest this theory and will no doubt advocate vigorously against Defendants' offset claim, but that is beside the point.  Defendants have the burden of proof as to their own defenses.  That they have committed to abandoning any defense that puts the Non-Party Respondents' state of mind at issue might weaken their position, but the risk that Defendants' offset claim might fail as a result of their strategic decision to abandon these defenses is not grounds for granting Plaintiffs' Motion.

_____

[2] The relevance of these documents to Plaintiffs' direct claims against Viva in the Delaware

Plaintiffs also argue that the documents are relevant to any choice-of-law arguments Defendants might raise. (*See* ECF No. 1-1 at 11.) However, Minnesota's conflict-of-laws analysis requires an assessment of what the *original* parties to the contract predicted, at the time of contracting, the governing law would be. *See Jepson v. General Cas. Co. of Wisconsin*, 513 N.W.2d 467, 471 (Minn. 1994); *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 738 (8th Cir. 1995) (holding that the "predictability" factor "goes to whether the choice of law was predictable before the time of the transaction or event giving rise to the cause of action, not to whether that choice was predictable after the transaction or event."). Moreover, predictability at the time of contracting is just one of the many factors courts weigh in conducting a choice-of-law analysis, *see, e.g., Sigler v. Ecolab, Inc.*, 625 F. Supp.3d 789 (D. Minn. 2022), and that factor is not applicable to every case, *see Nesladek*, 46 F.3d at 738 (stating that the predictability factor is of little relevance to tort cases). As neither FCI nor Viva was an original party to the insurance policies, their expectations regarding governing law would appear to have little to no relevance to this issue. (*See* ECF No. 1-1 at 9, "[T]he Policies changed hands among various investors through the years. At the time of the insureds' deaths, the Policies were beneficially owned by [the Non-Party Respondents].".)

Given the marginal relevance of the contested documents to the claims at issue in this case, any possible prejudice to Plaintiffs in denying their motion is also minimal. This is particularly true, given that Viva produced at least some documents in response to the subpoenas. (*See* ECF No. 20 at 12 n.5.) The Court further observes that, to the extent Plaintiffs seek additional documents from Viva, they have an ongoing, parallel lawsuit against Viva in Delaware in which a request for the documents still might be made.

Finally, the Court also weighs the marginal relevance of the materials sought against the

action is an entirely different question.

potential burden on Viva that enforcing these subpoenas is likely to impose.  The Court finds credible Viva's claim that producing its due diligence materials is likely to require significant time, effort, and legal expense redacting those materials to remove attorney-client communications and information regarding unrelated policies.  Moreover, the Court considers Viva's burden, as it must, in light of the fact that Viva is not a party to the underlying litigation.  *See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.");  *see also Alberts v. HCA Inc.*, 405 B.R. 498, 503 (D.D.C. 2009) (finding sanctionable the service of a subpoena on a non-party "for the patently improper purpose of obtaining information for a separate state court proceeding").

Under the totality of the circumstances: (1) Plaintiffs' delay in bringing their Motion and the impact that delay would have on the Court's schedule if the Motion were granted; (2) the limited relevance of the information at issue in *this* proceeding; (3) the fact that Viva has produced at least some responsive documents; and (4) the likely burdens of production on Viva, the Court denies the Motion as to the Viva subpoenas on the ground that the discovery sought is not proportional to the needs of this case.

## IV.    Attorneys' Fees and Costs

In its opposition to the Motion, FCI requests an award of attorneys' fees and costs based on the Court's inherent authority.  (ECF No. 18 at 32.)  A district court "possesses inherent power to manage its own affairs so as to achieve the orderly and expeditious disposition of cases."  *Adams v. USAA Casualty Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)) (internal quotation omitted).  Though, as previously stated, the Court has

concerns about the timeliness of the Motion and the proportionality of the requests, the Court has insufficient information on the present record to conclude that Plaintiffs have acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 46. The Court accordingly denies FCI's requests for fees.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Compliance with Subpoenas (ECF No. 1) is **DENIED** without award of attorneys' fees and costs.


Dated:  November 1, 2024                     *s/ Dulce J. Foster*
                                             _____
                                             DULCE J. FOSTER
                                             United States Magistrate Judge